```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2     - - - - - - - - - - - - - - X
         UNITED STATES OF AMERICA,    :   21-CR-00613(RPK)
 3                                    :
                                      :
 4                                    :   United States Courthouse
             -against-                :   Brooklyn, New York
 5                                    :
                                      :
 6       ANGEL ALMEIDA,               :   October 11, 2023
                                      :   3:00 p.m.
 7              Defendant.            :
                                      :
 8                                    :
       - - - - - - - - - - - - - X
 9        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE RACHEL P. KOVNER
10                 UNITED STATES DISTRICT JUDGE

11
                       A P P E A R A N C E S:
12

13    For the Government:       BREON PEACE, ESQ.
                                United States Attorney
14                              Eastern District of New York
                                    271 Cadman Plaza East
15                              Brooklyn, New York 11201

16                              BY:  ANTOINETTE RANGEL, ESQ.
                                     CHAND WARREN EDWARDS-BALFOUR, ESQ.
17                                   TARA BRIGIT McGRATH, ESQ.

18

19    For the Defendant:       LAW OFFICE OF BENJAMIN SILVERMAN
                                224 West 30th Street, Suite 302
20                              New York, New York 10001

21                              BY:  BENJAMIN SILVERMAN, ESQ.

22                              THE VITALIANO LAW FIRM, PLLC
                                1492 Victory Boulevard
23                              Staten Island, New York 10301

24                              BY:  MICHAEL VITALIANO, ESQ.

25
```

```
1    Court Reporter:            JAMIE ANN STANTON, RMR, CRR, RPR
                                225 Cadman Plaza East
2                               Brooklyn, New York 11201
                                Telephone: (718) 613-2274
3                               E-mail: JamieStanton.edny@gmail.com

4    Proceedings recorded by computerized stenography.
     Transcript produced by Computer-aided Transcription.
5

6                          *    *    *    *

7              (In open court.)

8              THE COURTROOM DEPUTY:  All rise.

9              THE COURT:  Please be seated.

10             THE COURTROOM DEPUTY:  United States of America

11   versus Angel Almeida.

12             Counsel, please state your name for the record.

13             MR. EDWARDS-BALFOUR:  Good afternoon, Your Honor.

14             Chand Warren Edwards-Balfour on behalf of the

15   Government.  With me, I have Assistant United States

16   Attorney Tara McGrath and Antoinette Rangel and also Special

17   Agent Nick Satwicz.

18             THE COURT:  Good afternoon.

19             MR. SILVERMAN:  Good afternoon, Your Honor.

20             Benjamin Silverman and Michael Vitaliano for Angel

21   Almeida, who is sitting in the jury box.

22             THE COURT:  Great.

23             Good afternoon and good afternoon to the

24   Defendant.

25             So I think there were a few things I think the
```

1    Government wanted to put on the record just about what the

2    charges are and what its plea offer was in this case.

3            Do you want to do that at the outset?

4            MR. EDWARDS-BALFOUR:  Sorry, what did you say,

5    Your Honor?

6            THE COURT:  Did you want to put on the record what

7    the penalties were for the charges and what your plea offer

8    to the Defendant was in this case?

9            MR. EDWARDS-BALFOUR:  Yes, Your Honor.  Yes, we

10   do, Your Honor.

11           THE COURT:  Great.

12           MR. EDWARDS-BALFOUR:  So we have a revised penalty

13   sheet, Your Honor.

14           And this would be the penalty if the Defendant

15   were to go to trial and be convicted for Count One, which is

16   the Felon in Possession of a Firearm and Ammunition, the

17   maximum is ten years, the minimum is -- there's no mandatory

18   minimum.

19           There's obviously supervised release terms,

20   maximum fine of $250,000, $100 special assessment and

21   criminal forfeiture.

22           The guidelines is around 27 to 33 months, assuming

23   the Defendant is in Criminal History Category of I, that's

24   all Count One, Your Honor.

25           Count Two is the Sexual Exploitation and Attempted

1    Sexual Exploitation of a Child.  The maximum is 30 years

2    imprisonment, the minimum is 15 years.  There are supervised

3    release as well.  The maximum is life.  There is also a

4    maximum fine, same as that was for the felon in possession.

5    There's restitution, which is mandatory, in the full amount

6    of the victim's losses.  Hundred dollar special assessment.

7    And there are other penalties including registration as a

8    sex offender and, for here, the statutory maximum is

9    30 years imprisonment -- no, hold on -- yes, statutory

10   maximum is 30 years imprisonment, the minimum is 15 years.

11   And the guidelines is about -- the guidelines is about

12   30 years.

13          Mann Act Coercion and Enticement and Attempted

14   Mann Act Coercion and Enticement, that's Count Three.  The

15   maximum term of imprisonment would be life.  The minimum is

16   10 years.  There is also supervised release terms.  Same

17   fine.  Restitution would be mandatory in the full amount of

18   the victim's losses.  Special assessment of a hundred

19   dollars.  Other penalties include the sex offender

20   registration.  And for this, the guidelines are effectively

21   life, assuming the Defendant falls within Criminal History

22   Category of I.

23          And then lastly, we've got Possession of Child

24   Pornography, which is Count Four.  The maximum term of

25   imprisonment would be 20 years.  The minimum, there is no

1    minimum.  There are supervised release guidelines.  Same --

2    same fine as before.  Restitution mandatory in full amount

3    of the victim's losses, hundred dollar special assessment.

4    Other penalties include sex offender registration.  And the

5    guidelines would be around life, assuming the Defendant

6    falls within Criminal History Category of I.

7              That's it.

8              THE COURT:  Okay.

9              And I gather you wanted to put on the record a

10   plea offer that you were making?

11             MR. EDWARDS-BALFOUR:  Yes, Your Honor.

12             We also have a plea offer that we would like to

13   put on the record that was extended.

14             MR. SILVERMAN:  Your Honor, can I just put on the

15   record, this offer that was transmitted to me last Wednesday

16   expired yesterday and I was not able to communicate the fact

17   of it to my client until today.  Only the fact of it was

18   communicated and not the substance.

19             THE COURT:  Got it.

20             So is this a plea offer that continues to be open

21   to the Defendant?

22             MR. EDWARDS-BALFOUR:  Yes, that's correct, Your

23   Honor.

24             THE COURT:  Okay.

25             MS. McGRATH:  Your Honor, I will just put on the

1    record the key terms.

2           The plea offer revision is the Defendant pleading

3    guilty to Count Three, which is the Mann Act Coercion and

4    Enticement and Attempted Coercion and Enticement, which

5    carries the maximum term of imprisonment of life and a

6    minimum term of imprisonment of 10 years.

7           I will just note that the indictment carries Count

8    Two, which has a minimum term of imprisonment of 15 years.

9    And so that's one meaningful way in which the plea offer

10   differs from the indictment.

11          The Government calculates the guidelines range

12   here to be life imprisonment.  And I will just read the

13   first two paragraphs into the record:

14          The Defendant will plead guilty to Count Three of

15   the above-captioned Superseding Indictment, charging a

16   violation of 18 U.S.C. Section 2422.  The count carries the

17   following statutory penalties:

18          A maximum term of imprisonment of life.  A minimum

19   term of imprisonment of 10 years.  A maximum supervised

20   release term of five years.  Apologies, a minimum supervised

21   release term of five years, and maximum supervised release

22   term of life, to follow any term of imprisonment; if a

23   condition of release is violated, the Defendant may be

24   sentenced to up to three years without credit for

25   pre-release imprisonment or time previously served on

1  post-release supervision; and, if the Defendant commits any

2  criminal offenses under Chapter 109A, 110, or 117, or

3  Title 18 United States Code, Sections 1201 or 1591, for

4  which imprisonment for a term longer than one year can be

5  imposed, the Defendant shall be sentenced to not less than

6  five years and up to life.

7          The maximum fine is $250,000.

8          Restitution is mandatory in the full amount of

9  victim losses.

10         There is a $100 special assessment.

11         And other penalties include:  Sex offender

12  registration pursuant to the Sex Offender Registration and

13  Notification Act, as set forth in the plea agreement as well

14  as criminal forfeiture.

15         The Defendant understands that although imposition

16  of a sentence in accordance with the United States

17  Guidelines is not mandatory, the Guidelines are advisory and

18  the Court is required to consider any applicable Guidelines

19  provision as well as other factors enumerated in 18 U.S.C.

20  Section 3553(a) to arrive at an appropriate sentence in this

21  case.  The Office will advise the Court and the Probation

22  Department of information relevant to sentencing, including

23  criminal activity engaged in by the Defendant, and such

24  information may be used by the Court in determining the

25  Defendant's sentence.

1          18 U.S.C. Section 3661 provides:  No limitation

2    shall be placed on the information concerning the

3    background, character, and conduct a person convicted of an

4    offense which a court of the United States may receive and

5    consider for the purpose of imposing an appropriate

6    sentence.  The Office estimates the likely adjusted offense

7    level under the Guidelines to be 49, which is predicated on

8    the following Guidelines calculation:

9          The Base Offense Level is 32.  There is a

10   four-point enhancement for the involvement of a sex act and

11   conduct described in 18 U.S.C. Section 2241(a).  There is a

12   two-point enhancement for the Defendant knowingly engaged in

13   distribution.  There is a four-point enhancement for the

14   material portrays sadistic or masochistic conduct or

15   depictions of violence.  There is a two-point enhancement

16   for the use of a computer or an interactive computer

17   service.  And there is a five-point enhancement for being a

18   repeat sex offender against minors.  Which results in a

19   total of 49.

20         The Defendant clearly demonstrates acceptance of

21   responsibility, through allocution and subsequent conduct

22   prior to the imposition of sentence, a two-level reduction

23   will be warranted, pursuant to Guideline 3E1.1(a), resulting

24   in an adjusted offense level of 47, which is to be treated

25   as an offense level of 43.  This level carries a range of

1    imprisonment of life, assuming that the Defendant falls

2    within Criminal History Category I.  Furthermore, if the

3    Defendant has accepted responsibility as described above, to

4    the satisfaction of the Office, and if the Defendant pleads

5    guilty on or before October 10, 2023, an additional

6    one-level reduction will be warranted, pursuant to

7    Guideline 3E.1.1(b), resulting in an adjusted offense level

8    of 46, which is to be treated as an offense level of 43.

9    This level carries a range of imprisonment of life, assuming

10   that the Defendant falls within Criminal History Category I.

11   The Defendant is also subject to a statutory mandatory

12   minimum sentence 120 months.  And the Defendant stipulates

13   to the above Guidelines calculation.

14          THE COURT:  So is the gist of the plea offer that

15   because the Defendant wouldn't be pleading to the count that

16   carries a 15-year mandatory minimum, there would be a ten

17   year mandatory minimum, but not a 15-year mandatory minimum

18   and otherwise the Guidelines are effectively the same, which

19   is effectively Guidelines of life?

20          MS. McGRATH:  That's correct, Your Honor.

21          And we will just note although the written offer

22   expired on October 10th, the Government is willing to extend

23   it until October 30th.

24          THE COURT:  Okay, got it.

25          I think it might also make sense to send the

1   material that you have read in court today to the Defendant,

2   just because this is a lot of information to be conveying

3   orally and probably the best way to do that is to have

4   Counsel for the Defendant mail it to the Defendant because I

5   am not sure that there will be another way to get that

6   material to him.

7         MR. SILVERMAN:  Yes, Your Honor.

8         I believe that the marshals have provided it.

9         THE COURT:  Great.  That's even better.

10        So I think there may be other issues the parties

11   want to raise.

12        I know where we were last time, I had expressed my

13   tentative view that the Defendant was competent based on the

14   competency evaluation that I got.  I expressed the tentative

15   view the Defendant was not capable of self-representation or

16   that at least I couldn't grant that request because the

17   Defendant had not been able to get through a Faretta

18   inquiry, which I need to do to determine that somebody is

19   knowingly and voluntarily waiving their right to Counsel.

20        After that, I got letters from the parties

21   addressing those two questions.  I am happy to hear more

22   from the parties on that today.

23        I will also give the Defendant the opportunity to

24   speak after the attorneys speak if the Defendant wants to

25   speak on those issues.

1          But I think where we are is there is a request to
2    do a further competency evaluation.

3          Is that still a request that's out there?

4          MR. SILVERMAN:  Yes, Your Honor.

5          THE COURT:  And does the Government have a
6    position on that request?

7          MR. EDWARDS-BALFOUR:  The Government doesn't
8    have -- the Government doesn't have any information that the
9    Defense Counsel -- Defense has some information that they
10   are relying on for that request that the Government doesn't
11   have access to.

12         Based on what is on the record before the
13   Government and before the Court, the Government feels that
14   there is nothing -- there is no reason why we would object
15   to what's currently determining the Defendant as competent,
16   but obviously, we don't have all the information that
17   Defense Counsel has.

18         So with respect to Defense Counsel request that's
19   outside of what the Government has access to, we take no
20   position.

21         THE COURT:  Okay.

22         I mean, I read -- I take that the request is a
23   request that was filed in the docket, right, and discusses
24   the basis for the request?

25         MR. SILVERMAN:  Yes, Your Honor.

1          Since the filing of that letter, I think that what

2     the Government's referring to, as I apprised the Government

3     shortly before court that I had a brief exchange with Angel

4     Almeida before court and that based on that exchange I was

5     also remained gravely and seriously concerned about

6     competence and need for psychiatric attention.  And what I

7     said is that I need to research whether I can share that and

8     what the extent of that waiver would be.

9          THE COURT:  Okay.

10         Can I just ask a question about timing?  I am just

11    sensitive to the fact the Defendant wants a speedy trial.

12         Can you get any supplemental evaluation done

13    quickly?  I mean, I am just wondering if we really need to

14    adjourn this case for 60 days.

15         MR. SILVERMAN:  Your Honor, I think that we do.

16    In terms of a supplemental evaluation, as far as I am aware,

17    the only way to do that would be to have it done by

18    observation at Butner, and then have someone else review the

19    same observational notes.

20         THE COURT:  Is that what you wanted to do?  I

21    thought you wanted your own evaluator?

22         MR. SILVERMAN:  Well, no.

23         So the request that we made is to gather the

24    social history and the records and then make the request.  I

25    spoke with the Government about this.  We certainly would

1   not oppose an observation or starting the process of that

2   because that is a process that takes several months.  We do

3   think that it is very likely going to be necessary.  We have

4   grave concerns about what's in the report based on our own

5   consultation that we've already had for the reasons that we

6   put in our letter.  We do think it would be entirely

7   appropriate to do an observation and supplement it with both

8   observational data and the data that we want to collect from

9   Florida and from Angel Almeida's family.

10          We do think that it's going to take some time.

11  Given where we are in terms of Communications, voluntary

12  communications, I think the 60 days is the minimum and,

13  realistically, it could take longer.

14          I appreciate the Court's concern and I appreciate

15  our client's expressed desires, but under the circumstances,

16  first, the speedy trial clock is not running at the moment

17  because we filed motions; second, it stops for further

18  determination of competence, which we believe is warranted

19  and absolutely necessary before this can proceed; third,

20  it's in the ends of justice, so that we can provide

21  effective Sixth Amendment assistance and satisfy our ethical

22  obligations under the New York Ethical Laws.

23          And as we cited in our letter, we think that we

24  have a protective obligation at this point, and so we

25  absolutely believe that we have to, and the Second Circuit

*Proceedings* 14

1 caselaw, I think, clearly empowers us to make that request

2 to exclude time notwithstanding what a pro se person said

3 before they were disallowed from proceeding pro se.

4   THE COURT:  I guess, maybe I had thought about

5 this a slightly different way just in terms of how further

6 competency assessment would unfold, because I take it that a

7 BOP evaluator made the initial determination.  We have that

8 report.  Generally, there is either a BOP evaluation here or

9 at Butner.

10   And what I was imaging was that if you wanted me

11 to appoint, effectively, a defense evaluator to do a

12 supplemental evaluation, we could do that.  It's a little

13 weird for me to ask BOP to go do another evaluation.

14   MR. SILVERMAN:  So the conundrum we find ourselves

15 in, and the Court did appoint Dr. Goldsmith, who has

16 effectively become a supplemental evaluator.  The problem

17 that we have is an evaluator either needs observation or

18 interviews.

19   And I note on page 3 of the evaluation that we

20 have, it says that most of the quotes that are provided are

21 from a questionnaire.  It's the first paragraph under the

22 developmental history heading, second sentence:  The quotes

23 in this section are from -- primarily from her writings on

24 the questionnaire.

25   So we have a situation where most of what's been

1  gathered has been in writing.  We don't have access to the
2  questionnaire, and we don't have observational data.

3          I absolutely do believe, Your Honor, that there is
4  a record at this point for the Court to request further
5  evaluation with observational data.

6          If the Court doesn't want to do that or does not
7  think it would be appropriate because BOP has already issued
8  a judgment, then we would request time to figure out the
9  best alternative report that we could muster.  And very
10 likely we would end up moving for a litigated competence
11 hearing because we think right now by a preponderance of the
12 evidence there's very strong reason to believe that we could
13 easily meet -- I don't want to overstate it, but I think we
14 could meet that burden, that low burden of establishing that
15 this is someone who needs to be medicated to competence
16 before they can proceed.

17         THE COURT:  Do you know whether BOP, in this
18 situation, would do a supplemental evaluation?

19         I think, the two things I am thinking about are
20 authorizing to the extent that it's not already authorized,
21 an evaluation, a defense evaluation of competency, or it
22 sounds like the expressed preference is to have BOP do a
23 supplemental evaluation.  I just don't know offhand if BOP
24 is in the position to do a supplemental evaluation.  I am
25 also concerned about the time that that usually takes.  But

1   I don't know if you have any insight, it's fine if you

2   don't, as we sit here today.

3            MR. EDWARDS-BALFOUR:  Can you give us one second,

4   Your Honor?

5            THE COURT:  Sure.

6            MS. McGRATH:  Your Honor, our understanding is

7   that if the Court orders additional evaluation, the BOP will

8   endeavor to provide it and there have been other cases where

9   multiple evaluations have been done.

10           It's not quite clear to us what the Defense

11  Counsel is proposing, whether it's a separate evaluator

12  going to MDC or at this juncture for the Defendant to be

13  moved somewhere else for the evaluation.

14           MR. SILVERMAN:  Your Honor, I think the answer is

15  it's for observational evaluation.

16           The reason is based on where we are, we have no

17  ability to have our own assessment done other than through

18  observational data, and that is one way to perform these

19  evaluations.

20           And I think it's important to note on the record

21  for purposes of speedy trial that in, over the summer, we

22  were concerned about the fact that BOP preliminarily wanted

23  to move Angel Almeida to Butner and the amount of time that

24  would take and at that time, based on where we were and my

25  only having one brief interaction and what I felt were my

1   obligations, we tried to move this faster by having it done

2   in New York.

3           We would not be asking for that amount of time if

4   we didn't believe that it was absolutely necessary.  And I

5   believe that it's absolutely necessary to request the amount

6   of time it's going to take to do that observation.

7           It's not a matter of wanting BOP to do it.  There

8   is just no other alternative, from where we stand, because

9   there's no other way to do an observational analysis with

10  data that could be shared with someone else should we

11  disagree with it.

12          And we believe that it would be efficient to start

13  that process since we're going to be gathering records and

14  doing the social history anyway, and then sharing that

15  information with BOP and the Government, we think that we --

16  it would make sense to start that waitlist and movement

17  process and it would be more efficient to get that ball

18  rolling for sure, because I absolutely believe that the next

19  step is that we would request that observational analysis

20  for BOP to reassess its report.

21          THE COURT:  So you are envisioning a request,

22  effectively, that BOP do a supplemental competency analysis

23  that includes observation and consideration of the records

24  that you are going to provide to BOP?

25          MR. SILVERMAN:  Yes, Your Honor.

1           THE COURT:  Okay.  I mean, I just want to make

2    sure that we are going to resolve this and get the

3    information that you want.

4           The core competency concern here is I think that

5    the Defendant has not been willing to interact with any

6    lawyers, and that just raises a question of whether the

7    Defendant is capable of working with a lawyer in the way

8    that's required for competency.

9           Is observation really going to shed light on that?

10          MR. SILVERMAN:  I believe it could, Your Honor,

11   for several reasons.

12          First, it gives you a more informed view.  So when

13   I am looking at this report on page -- the way this report

14   was done, it appears several different doctors had a single

15   meeting with Angel Almeida.  And from that, those single

16   meetings, Dr. Jenkins -- and a questionnaire -- Dr. Jenkins

17   performed a report.

18          One of the doctors made a finding -- and I'm going

19   to be careful about what I say because we are in an open

20   courtroom, there may be members of public here and the

21   press -- but made a finding that doesn't appear to have been

22   further addressed by the other doctors in any level of

23   detail.

24          And I further note, because I didn't put this in

25   my letter, but that on page 13, in the second full

1   paragraph, it indicates that that symptom that's related to

2   Dr. Bryskin's finding that we identified in our letter,

3   Dr. Bryskin's finding is at the bottom of page 9 in the

4   report.  On page 13 in the second full paragraph, it states

5   that those symptoms of psychosis extend beyond the

6   courtroom, right?  That is that there is -- these are

7   symptoms that are manifesting.  And it also says in the

8   report that Angel Almeida is no longer communicating with

9   their family.

10        And so there is a record that this is a form of

11  paranoia that's not just courtroom behavior.  And so that

12  concerns us.

13        So yes, we think that observation will provide

14  significant additional data.  We think that the earlier

15  medical records we find and the family history that tracks

16  the history of the behavior and when it developed, that's

17  highly relevant information.

18        But most significantly, if we challenge BOP's

19  finding, if they don't revise their conclusion and if we

20  decide that we are obligated to challenge it, the only way

21  we can effectively do that is by having substantially more

22  data that would be done from observation shared with our own

23  doctor.

24        THE COURT:  Okay.  All right.

25        I mean, I would be inclined to issue the order

1    that Mr. Silverman's talking about.  My hope would be that

2    this is something that BOP can do expeditiously because I do

3    want to respect the request that we try this case sooner

4    rather than later made by the Defendant.

5           So I know that BOP has resource constraints, but

6    that is going to be my hope.  I will issue an order along

7    those lines.

8           Are there other issues the attorneys want to

9    raise?

10          MR. SILVERMAN:  Your Honor, can I have a moment to

11   consult with the Government?

12          THE COURT:  Sure.

13          MR. SILVERMAN:  Thank you.

14          THE COURT:  And implicitly, I think I am going to

15   have to adjourn the trial date if I grant that request.

16          So I will do that and we can talk about setting,

17   just marking a new date on the calendar, I think, for

18   everybody's scheduling purposes, that's more than 60 days

19   out, but relatively soon after that.

20          (Pause.)

21          MR. SILVERMAN:  Just looking at the calendar, Your

22   Honor.

23          THE COURT:  Got it.

24          And I was just doing that, too.  It looks like

25   perhaps January, we can set down a date in January that I

1    would reserve for this trial.

2              I don't know what the parties' availability is.

3              MR. SILVERMAN:  I possibly have a trial before

4    Judge Rochon scheduled for January 9th.  It is very likely

5    going to be adjourned, but right now it's still on the

6    calendar, and so I have to caveat that, that I have to

7    make it a priority since it's --

8              THE COURT:  Is that a one-week trial?

9              MR. SILVERMAN:  It would be a multi-week trial.

10             THE COURT:  It would be a multi-week trial.

11             How about that last week that I have the civil

12   trial, but I can move the civil trial, that is the week of

13   the 29th?  So I would take that date, I have got that as a

14   civil trial date that I could convert if the parties are

15   available the 29th?

16             MR. SILVERMAN:  We are available.

17             MR. EDWARDS-BALFOUR:  The Government's available.

18             THE COURT:  Okay.

19             So let's set a tentative trial date of the 29th of

20   January just so that we have that available.  I know there

21   are motions pending.  And I am anticipating that I will

22   issue an order today that requests the supplemental

23   evaluation and that adjourns the existing trial date and

24   that excludes time to permit that supplemental evaluation.

25             MR. SILVERMAN:  Your Honor, can I just ask the

1    Government to estimate the length of the Government's case

2    for this trial?

3               MR. EDWARDS-BALFOUR:  Approximately two weeks,

4    Your Honor.

5               THE COURT:  Okay.  All right.

6               I know I indicated that I would permit the

7    Defendant to speak if the Defendant wanted to speak at the

8    proceeding, given that the Defendant does not want to be

9    represented by Counsel in this case.

10              Is there anything that you wanted to say in court today?

11              THE DEFENDANT:  I just think it's a waste of time,

12   and you shouldn't even change the date from December

13   the 3rd.  I mean, like I said, I am not a fucking retard,

14   this shit's a waste of time.  On December the 3rd, if I go

15   to trial I will simply show you all magic by name and I am

16   going to show you a fucking miracle and I am going to get

17   the fuck out of here.

18              MR. SILVERMAN:  Your Honor, at this point I have

19   to interject --

20              THE DEFENDANT:  I am just saying I don't need

21   nobody to talk for me.  All right?  I got spirits on my

22   side, so I ain't worried about none of this shit.

23              THE COURT:  Okay.  Got it.

24              MR. SILVERMAN:  Thank you, Your Honor.

25              THE COURT:  All right.

Proceedings                                  23

1        MR. SILVERMAN:  Your Honor, may I just request

2    that the marshals keep Angel Almeida up here for a few

3    minutes in the pen after court, so that we have a chance to confer?

4        THE COURT:  Sure.

5        MR. SILVERMAN:  Thank you, Your Honor.

6        THE DEFENDANT:  This is a waste of time, bro.

7        I don't know why they gave me a fucking plea deal.

8    I told these niggas I want to go to trial.  They can shove

9    their plea deal up their ass.  I don't need no mercy.  I

10   don't need no forgiveness.  I don't need none of that

11   bullshit.  These niggas want to program my fucking mind,

12   bro, come on, let's hurry this shit up.

13       THE COURT:  Okay.

14       So I think we have got a trial date, and we have

15   got a plan going forward.

16       MR. EDWARDS-BALFOUR:  Nothing further from the

17   Government.  Thank you, Your Honor.

18       MR. SILVERMAN:  Thank you, Your Honor.

19       THE COURT:  Thanks, everyone.

20       (Matter adjourned.)

21               *     *     *     *     *

22   I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
23

24    /s/ Jamie Ann Stanton              October 11, 2023

25   _____        _____
        JAMIE ANN STANTON                    DATE