LAW OFFICE OF

# BENJAMIN SILVERMAN

224 WEST 30TH ST., SUITE 302
NEW YORK, NY 10001

TEL (212) 203-8074
FAX (646) 843-3938
Benjamin@bsilvermanlaw.com

October 23, 2023

**BY ECF**
The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Almeida*, 21 Cr. 613 (RPK)

Your Honor:

We represent Angel Almeida in the above-captioned case and write respectfully to oppose the government's request for a so-ordered subpoena for our client's medical and other records. As discussed below, the government's request contravenes both Rule 12.2(c)(4) and the Fifth Amendment; it is unnecessary; and it fails to meet the *Nixon* standard.

## I.    Background

### A.    The ongoing competency evaluation

On October 12, 2023, the Court ordered BOP to further assess Angel Almeida's competency. The Court's Order noted Angel Almeida's continued refusal to work with counsel and the reference in the initial competency assessment to Florida records that may contain relevant diagnoses. The Court's October 12, 2023 Order further required that a competency report "shall include observation[1] of the defendant and past treatment records **that defense counsel will obtain** and provide to BOP" (emphasis added).

Last week, the government informed us that there is an approximately six-month waiting list for a bed at FMC Butner, where BOP conducts many competency evaluations. That is consistent with what the government has disclosed in other cases in

---

[1] At a conference on October 11, counsel stated that said observation will likely be necessary to evaluate our client under present circumstances, *see* 10/11/23 Tr. (Dkt. 62) at 12-15.

Hon. Rachel P. Kovner
United States District Judge
October 23, 2023
Page 2

this district. *E.g.*, Gov't Letter, *United States v. Crawford*, 20 Cr. 224 (PKC) (E.D.N.Y. Mar. 2, 2022), Dkt. 61 (noting five-to-seven-month waitlist at Butner).

The parties are conferring about an independent evaluation of Angel Almeida in New York while Angel is on Butner's waitlist; and we have requested that they remain on the waitlist because we are unsure whether Angel will voluntarily cooperate with further evaluation and whether it will be possible to reach conclusions without observation.

The Court, the parties, and every psychiatrist with whom counsel has conferred all recognize that Angel Almeida's records from Florida may, depending on what is contained in them, be centrally relevant to further evaluation. We are endeavoring to obtain them as quickly as we can under certain unusually difficult circumstances.

Separately, the government has already helped us acquire some of our client's medical records from MDC Brooklyn – which discloses records upon request to the government but not to defense counsel.[2]

### B.     The government requests a so-ordered subpoena.

Last Wednesday morning, the government transmitted a request, by email, for a so-ordered subpoena for Angel Almeida's records from Miami Dade Juvenile Detention Center. The government's email does not provide legal authority to justify the request for documents that are not already in the government's possession, custody, or control. Counsel asked the government if it could proffer the justification for its application or state how it meets the *Nixon* standard for the Court to issue a Rule 17 subpoena. The government responded as follows: "At this time, we are not providing a proffer. We'll await your opposition."

The records the government seeks are highly sensitive, personal, and confidential.[3] We have not seen the records yet, but they will likely contain statements made by Angel

---

[2] Dr. Jenkins' report states (at 3) that its quotes attributed to Angel Almeida are largely based on Angel's questionnaire responses. We have requested that written questionnaire. (Dr. Jenkins recently told the government that she filled out the form with Angel Almeida and interacted with Angel orally as well as in writing.) We have also asked for notes and materials from Dr. Bryskin's June 2023 evaluation at MDC.

[3] *Cf. United States v. Byers*, 740 F.2d 1104, 1151 (D.C. Cir. 1984) (Bazelon, J., dissenting) ("The compelled psychiatric examination significantly intrudes into the 'private enclave' of the human personality. The very goal of the examination is to discover and to analyze the intricacies of the individual's thought processes. The psychiatrist seeks to uncover aspects of the personality which the individual ordinarily

Hon. Rachel P. Kovner
United States District Judge
October 23, 2023
Page 3

Almeida while in custody; the statements may or may not have been compelled, for example, if a competency evaluation was ordered by Florida authorities.

In addition to being intrusive, the government's request is unnecessary because the defense – which will bear the burden at any competency proceeding – is independently obtaining the relevant records. Indeed, we noted in our October 5 letter (Dkt. 57 at 6) that we believed it would be ineffective not to obtain these records. We described efforts to obtain these records from prior counsel and stated that we will try to obtain them directly from Florida. We have done so.

Because the defense has taken appropriate steps expeditiously to gather records that may be relevant to a future competency hearing, the government's application is unnecessary. Further, for the reasons below, it is contrary to the rules and the Fifth Amendment.

## II.    The government's request should be denied.

The government's application should be denied for three separate and independent reasons. First, it contravenes Rule 12.2(c)(4) and the Fifth Amendment. Second, no legal basis, under Rule 17 or otherwise, authorizes the Court to sign the government's subpoena; and the government notably provides no legal justification for its request. Third, signing the subpoena will force the parties immediately to litigate, and the Court to decide, challenging issues that may be mooted after the defense reviews the records at issue.

### A.  The government's request violates Rule 12.2 and the Fifth Amendment

The government's application should be denied because it contravenes both Rule 12.2 and the Fifth Amendment. Rule 12.2(c)(4) provides that statements made by a defendant during a competency evaluation may not be used by the government for any reason other than to assess and litigate competency. The government learned about the Florida records it seeks from statements that Angel Almeida made to a competency evaluator. It now asks the Court to sign a subpoena that would permit it to obtain Angel Almeida's records and use them for *any* purpose. That is not allowed. Further, Angel

---

does not reveal to others and which he may not consciously perceive. The information elicited – thoughts, dreams, fantasies, anxieties – is often that which the conscious mind tries to repress. The articulation of these previously hidden thoughts may be profoundly threatening to the individual. Far more than the police interrogation, which seeks objective facts of a crime, the psychiatric examination probes the core of the 'inviolable[le] . . . human personality.'")

Hon. Rachel P. Kovner
United States District Judge
October 23, 2023
Page 4

Almeida has a Fifth Amendment due process right not to be tried unless or until they are restored to competence; and Angel may pursue this due process right without compromising any other constitutional rights, including the right against self-incrimination.

## 1.       Applicable Law

Rule 12.2(c)(4) provides strict limits on how the defendant's statements to an evaluator may be used:

> No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, **and no other fruits of the statement** may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant [has introduced evidence of incompetence].

Fed. R. Crim. P. 12.2(c)(4) (emphasis added); *see also Kansas v. Cheever*, 571 U.S. 87, 93 (2013) ("[U]nder the Fifth Amendment, when a criminal defendant neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, his compelled statements to a psychiatrist cannot be used against him.") (internal quotation marks omitted).

Judge Kaplan explained that Rule 12.2(c)(4) functions as "an immunity order. The compulsion of testimony under an order of use immunity is consistent with the privilege against self-incrimination because the statute prohibits the use of that testimony against the witness unless the witness waives the privilege. Likewise, the compulsion of statements by an order to submit to a psychiatric examination is unobjectionable on Fifth Amendment grounds in light of Rule 12.2(c)(4)'s parallel protection." *United States v. Harding*, 219 F.R.D. 62, 64 (S.D.N.Y. 2003); *see generally United States v. Chitty*, 760 F.2d 425, 432 (2d Cir. 1985) (Fifth Amendment "precludes reliance at sentencing on the statements made by [the defendant] under the circumstances of his court-ordered competency examination.") (citing *Estelle v. Smith*, 451 U.S. 454 (1981)).

Courts therefore recognize the sharp limits on using statements made to competency evaluators. *E.g.*, *United States v. Miller*, 267 F. Supp. 2d 104, 108 (D. Me. 2003) ("It should be noted here that the plain language of the rule holds that the future use by the prosecution of such statements is precluded insofar as it seeks to use these statements against the defendant . . . .  Here, the use of Defendant's statements from his psychiatric examination were used solely for the limited, neutral purpose of ensuring that

Hon. Rachel P. Kovner
United States District Judge
October 23, 2023
Page 5

he is competent to stand trial and, as such, do not fall within the prohibitions of Rule 12.2(c)(4). **They cannot be used against him at trial or at sentencing**, even if, and especially if, he asserts the insanity defense. Otherwise, they most certainly can be used to assist the trial judge in making a competency determination.") (emphasis added).

### 2.    Analysis

The government learned about the Florida records that it seeks by reading what Angel Almeida told Dr. Jenkins during a court-ordered competency evaluation: the records are direct "fruit" of Angel Almeida's self-reporting to a competency evaluator. It is therefore improper for the government to obtain the records in a manner that would allow them to use the records indefinitely in the future for any purpose, or to share them with the media. Further, if it obtains those records at this time, the government may place itself in the difficult position of proving that later-obtained materials are not tainted fruit further derived from Angel's compelled statements to a competency evaluator; by obtaining these records via its proposed subpoena, the government may create difficulties for itself going forward.

On the other hand, these concerns can be addressed where the defense obtains the records, as we are doing, and shares them if or when we make a motion for a hearing at which we will seek to establish lack of competence. At that time, we can negotiate with the government about proposing a protective order for the Court to endorse – as the government frequently asks of us, including in this case, when it produces sensitive evidence that it will rely upon to meet its evidentiary burdens.

The defense's concern extends beyond trial, sentencing, and other potential proceedings that loom over cases with charges like the ones here; we are also concerned about the government's unfettered ability to disseminate the contents of these records to the media. The government is the only party to have issued a press release or communicated with the media in this case. If or when the defense moves for a competency hearing rendering certain material disclosable, we will ask the government to agree to, and the Court to authorize, an appropriate protective order.

Further, it is possible that the records will not contain any diagnoses or information relevant to competency; but will contain only information that prejudices Angel Almeida in other future proceedings. In that case, it is possible that the documents, once obtained by the defense, will not become discoverable.

It is also possible that the defense will not request a hearing after reviewing the records at issue and further assessing Angel Almeida's competence. If that were to happen, the government will not be entitled to the Florida records. *Cf. Powell v. Texas*, 492 U.S. 680, 685-86 n.3 (1989) (opining on capital penalty phase trial; "nothing in our

Hon. Rachel P. Kovner
United States District Judge
October 23, 2023
Page 6

precedents suggests that a defendant opens the door to the admission of psychiatric evidence on future dangerousness by raising an insanity defense at the guilt stage of the trial").

Finally, the government's request contravenes the Fifth Amendment. Angel Almeida's competency is being assessed to assure due process rights. *See Harris v. Kuhlmann*, 346 F.3d 330, 349 (2d Cir. 2003) ("The constitutional right to due process is violated when a person who is incompetent is convicted of a crime, whether the conviction follows a trial or a plea of guilty."). Angel Almeida cannot be required to sacrifice one constitutional right to vindicate another. *See, e.g.*, *United States v. Oliveras*, 906 F.2d 623, 627-28 (2c Cir. 1990) (discussing doctrine of "unconstitutional conditions"); *see generally Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) ("We have said in a variety of contexts that the government may not deny a benefit to a person because he exercises a constitutional right.") (internal quotation marks omitted); *United States v. Whitten*, 610 F.3d 168, 194-95 (2d Cir. 2010) (opining on doctrine of "unconstitutional conditions"). It is therefore improper to allow the government to use the competency evaluation process as a vehicle to obtain documents that it can use against Angel Almeida for other future purposes such as trial, sentencing, and post-sentencing hearing. For this reason as well, the Court should deny the government's request.

### B. The government lacks legal authority to support its request.

Even if the government's emailed request for a so-ordered subpoena were not prohibited by Rule 12.2 and the Fifth Amendment, the request should still be denied because there is no legal authority to support the Court's exercising its power on the government's behalf to obtain these documents.

First, the relevant statute anticipates only that the *defense* may subpoena information for a competency hearing. 18 U.S.C. § 4247(d). That makes sense: the defense has the burden of proof at a competency hearing and the roles are therefore reversed from the normal processes in a criminal prosecution. It is the defendant's obligation to gather the records necessary to establish the case; the government, for its part, is not required to make any showing.

Second, insofar as the government makes this request under Rule 17(c), the request should be denied. Ordinarily Rule 17(c) is "trial-focused" and "may be used only to obtain materials admissible as evidence at trial," but some courts have held that Rule 17(c) can be used to compel the production of documents in connection with a suppression hearing. *United States v. Louis*, 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005). "The party requesting the Rule 17 subpoena must make a preponderance showing

Hon. Rachel P. Kovner
United States District Judge
October 23, 2023
Page 7

that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *United States v. Rivera*, 2015 WL 1540517, at *3 (E.D.N.Y. Apr. 7, 2015).

The government's application should be rejected because it does not even attempt to "make a preponderance showing" that it meets the *Nixon* standard. *Rivera*, 2015 WL 1540517, at *3. It emailed its request to the Court without justification and explicitly declined to respond to counsel's request for a proffer about how *Nixon* is satisfied, or if any other grounds exist for the Court to sign the subpoena. Further, the subpoena is not the only way for the government to obtain these materials should a competency hearing occur. If or when the defense moves for a hearing to establish Angel Almeida's present lack of competence, certain discovery obligations will ensue. Courts have been quick to remind defense lawyers that they should not request Rule 17 subpoenas to obtain materials beyond what is appropriately discoverable or admissible at the particular trial or hearing. *E.g.*, *United States v. Maxwell*, 2021 WL 1625392, at *1 (S.D.N.Y. Apr. 27, 2021) ("[C]ourts must be mindful not to allow the Rule 17(c) process to become a broad discovery device that would undermine the discovery procedures set forth in Rule 16."). The same is true here, albeit with the roles reversed: the specter of a competency hearing does not entitle the government to obtain, without restriction, sensitive material otherwise barred for general use. If the material becomes discoverable, then the government will receive it.

This is not a matter of withholding relevant material from the government. It is a about allowing the defense its decision whether to waive otherwise confidential material by seeking to establish something at a hearing. The government frequently faces this very decision, and it is granted discretion in how to proceed. For example, the government generally need not disclose a witness statement unless it calls that witness to testify; and there is nothing wrong with the government selecting trial witnesses by considering the discovery obligations each witness would impose. Similarly, when a client is under investigation, counsel does not ask the government for search warrant returns or even if there are search warrants; we are not entitled to those materials unless or until there is both an indictment and a trial strategy rendering those warrants and returns discoverable. It is the same situation here just with the shoe on the other foot: the defense is entitled to gather materials and assess them before determining what, or to what extent, to waive otherwise confidential materials by requesting relief or seeking a hearing that renders them disclosable.

Hon. Rachel P. Kovner
United States District Judge
October 23, 2023
Page 8

> **C.     Granting the government's request will expedite the need for briefing on complicated and difficult questions**.

Finally, as a prudential concern, granting the government's – legally unsupported – request for a so-ordered subpoena for sensitive records will expedite the need for the parties to brief and the Court to rule on complicated issues that would only become relevant if this case proceeds to a contested competency hearing. Specifically, some courts have indicated that the Fifth Amendment requires government firewall counsel for certain kinds of competency proceedings. *See United States v. Sampson*, 1 F. Supp. 3d 214, 218 (D. Mass. 2014); *United States v. Sampson*, 82 F. Supp. 502, 516 (D. Mass. 2014). It is not appropriate for counsel who will prosecute Angel Almeida at trial and sentencing to access or learn the contents of documents that need only be disclosed to vindicate a due process right during the course of a competence proceeding; as previously noted, a defendant cannot be compelled to sacrifice one right to assert another. Although *Sampson* was a capital case, the Fifth Amendment's function does not depend on the severity of the potential penalty. *Chitty*, 760 F.2d at 431-32 (opining that Supreme Court's holding in *Estelle* is grounded in Fifth Amendment generally and not confined to capital cases). Given what may become relevant at any sentencing in this case, as well as other future proceedings, there may be grounds to move in this case for firewall counsel at a competency hearing. We do not believe it is necessary to litigate this matter or force a decision about whether to make this request right now because the government is not entitled to the subpoena that it asks the Court to sign.

## III.    Conclusion

For the foregoing reasons, the Court should decline to sign the subpoena submitted by the government last Wednesday morning by email. Because the government has not yet provided its justification for requesting the subpoena, we respectfully request leave to address any arguments the government raises that we have not anticipated in this letter.

Respectfully submitted,

/s/  Benjamin Silverman
Benjamin Silverman
Michael Vitaliano
*Attorneys for Angel Almeida*

cc: Counsel of record (by ECF)
     Angel Almeida (by U.S. mail)