# EXHIBIT

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.   21-MJ-1329 |
| ███████████████ NEW YORK | ) |
| ███ AND ALL CLOSED AND LOCKED CONTAINERS | ) |
| THEREIN AND ALL ELECTRONIC DEVICES FOUND THEREIN | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

      An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     New York    
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A

      I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B

      **YOU ARE COMMANDED** to execute this warrant on or before     November 29, 2021     *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

      Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

      The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     the Duty Magistrate Judge    .
                                          *(United States Magistrate Judge)*

    ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☐ for      days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of              .

Date and time issued:     *11/22/21 1:45 pm*                    *Vera M. Scanlon*
                                                                 *Judge's signature*

City and state:     Brooklyn/Central Islip, NY            Hon. Vera M. Scanlon     U.S.M.J.
                                                                    *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: 21-MJ-1329 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Print    Save As...    Reset

## ATTACHMENT A

### Property to be searched

The property to be searched is the premises known as █████████████ █████████████████████████, NEW YORK, AND ALL CLOSED AND LOCKED CONTAINERS THEREIN AND ALL ELECTRONIC DEVICES FOUND THEREIN (the "SUBJECT PREMISES").

The SUBJECT PREMISES is an apartment located inside a multi-story brown-and-orange brick apartment building. The front entrance to the building has a glass exterior door with the number ████ displayed above. Upon entering the building, there is a lobby with mailboxes for each apartment on one wall; the mailbox for ████ includes a label on it that says "Almeida." There is another glass locked door to further enter the building. The SUBJECT PREMISES is located on the ████ floor of the building. The door to the SUBJECT PREMISES apartment has the number ████ printed on it.

Photographs of the SUBJECT PREMISES are below:

**ATTACHMENT B**

**Particular Things to be Seized**

The items to be seized from the premises described in Attachment A include all information and objects that constitute fruits, contraband, evidence and instrumentalities of violations of Title 18, United States Code, Sections 922(g)(1) (unlawful firearms possession by a convicted felon) and 48 (distribution of animal crush video) (the "Subject Offenses") committed by Angel Almeida, together with others, known and unknown, including the following documents, records, and items:

1.    Any firearms, ammunition, explosives or explosive precursor materials.

2.    Accessories consistent with the use of firearm and ammunition use and possession, including but not limited to holsters, scopes, silencers, firearm cleaning equipment, Kevlar vests, flak jackets, and firearm targets.

3.    Uniquely identifiable clothing and personal items, including the mask, hats, shirts, poster and wristband in the pictures below:






4.      Records, documents, information, photographs, and/or videos related to animal abuse and distribution of animal crushing videos.

5.      Any cellular telephones, computers, or electronic devices that belong to Angel Almeida, or are reasonably believed to have been used by Almeida in connection with the Subject Offenses, and any related evidence, including all type software, hardware, software, passwords, and data security devices;

6.      Records and information related to the use of social media and email accounts.

7.      Records and information related to internet usage at the SUBJECT PREMISES.

8.      Records and information related to association with the Order of Nine Angles or any other violent extremist organization.

   a.  Any firearms, ammunition, explosives or explosive precursor materials;

   b.  Any evidence of firearm, ammunition, explosives, or explosive precursor ownership, and

   c.  Any computers or electronic devices, including cellular telephones, that can be used to create, store, print, or send written correspondence.

9.      For any computer or storage medium, including cellular telephones, whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "Computer"):

   a.  Records and information related to the items described in paragraphs 1 through 8 above.

   b.  Records and information related to the Subject Offenses.

   c.  evidence of who used, owned, or controlled the Computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   d.  evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   e.  evidence of the lack of such malicious software;

2

    f.    evidence indicating how and when the Computer was accessed or used to determine the chronological context of Computer access, use, and events relating to crime under investigation and to the Computer user;

    g.    evidence indicating the Computer user's state of mind as it relates to the crime under investigation;

    h.    evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence;

    i.    evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer;

    j.    evidence of the times the Computer was used;

    k.    passwords, encryption keys, and other access devices that may be necessary to access the Computer;

    l.    documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer;

    m.    records of or information about Internet Protocol addresses used by the Computer;

    n.    records of or information about the Computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    o.    contextual information necessary to understand the evidence described in this attachment.

This warrant authorizes law enforcement personnel to:

    1.    Press or swipe the fingers (including thumbs) of Angel Almeida to the fingerprint scanner of any seized device as to which it appears Angel Almeida is the owner or has custody or control and with a biometric unlocking feature;

    2.    Hold Angel Almeida in place while holding a device as to which it appears Angel Almeida is the owner or has custody or control and with a biometric unlocking feature in front of his face to activate the facial recognition feature; and/or

    3.    Hold Angel Almeida in place while holding a device as to which it appears Angel Almeida is the owner or has custody or control and with a biometric unlocking feature in front of his face to activate the iris recognition feature,
all for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.
    Law enforcement officers or agents will select which fingers to press to the device(s).

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

DMP:CRH
F. #2021R01035

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES KNOWN AS ███████, NEW YORK ████, AND ALL CLOSED AND LOCKED CONTAINERS THEREIN AND ALL ELECTRONIC DEVICES FOUND THEREIN | **TO BE FILED UNDER SEAL**<br><br>**APPLICATION FOR SEARCH WARRANT FOR A PREMISES AND ELECTRONIC DEVICES FOUND THEREIN**<br><br>Case No. __21-MJ-1329__ |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION UNDER RULE 41 FOR WARRANTS TO SEARCH AND SEIZE

I, SEAN JOHNSON, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the residence known as ███████ ████████ NEW YORK, AND ALL CLOSED AND LOCKED CONTAINERS THEREIN AND ALL ELECTRONIC DEVICES FOUND THEREIN (the "SUBJECT PREMISES"), as further described in Attachment A, and for the property to be seized in Attachment B, which are incorporated by reference.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent with the FBI since 2017, and currently work on the FBI's Joint Terrorism Task Force ("JTTF") on matters related to domestic terrorism and violent extremism. As part of my duties, I investigate criminal violations relating to various federal crimes, including

investigations into firearms. I have participated in the execution of search warrants, including searches of email and social media accounts, physical premises and electronic devices.

3.      I am familiar with the facts and circumstances set forth below from my own participation in the investigation, my review of the investigative file, and from my conversations with, and review of reports of, other law enforcement officers and agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Where the contents of documents and written communications are summarized herein, they are summarized in sum and substance and in pertinent part unless otherwise indicated.

4.      As described further below, there is probable cause to believe that the SUBJECT PREMISES contain evidence, fruits, and/or instrumentalities of the following violations of federal law by Angel Almeida: Title 18, United States Code, Sections 922(g)(1) (unlawful firearms possession by a convicted felon) and 48 (distribution of animal crush video) (the "Subject Offenses").

**THE SUBJECT PREMISES**

5.      The SUBJECT PREMISES is ███████████████████████ New York ████ The SUBJECT PREMISES is an apartment located inside a multi-story brown-and-orange brick apartment building. The front entrance to the building has a glass exterior door with the number ████ displayed above. Upon entering the building, there is a lobby with mailboxes for each apartment on one wall; the mailbox for ███ includes a label on it that says "Almeida." There is another glass locked door to further enter the building. The SUBJECT PREMISES is located on the ████ floor of the building. The door to the SUBJECT PREMISES

2

apartment has the number ▮▮▮ printed on it.  Records provided by Amazon and T-Mobile identify the SUBJECT PREMISES as the residence for Angel Almeida, and records from Verizon indicate that Almeida uses the internet at the SUBJECT PREMISES as described more fully below. Additionally, physical surveillance by the FBI has observed ALMEIDA coming and going from the apartment building where the SUBJECT PREMISES is located, in a manner that suggests he currently lives there, as recently as November 2021.  Accordingly, this search warrant application seeks authorization to search all parts of the SUBJECT PREMISES, and all closed and locked containers and electronic devices found therein, for the things described in Attachment B.  Pictures of the SUBJECT PREMISES follow:





**PROBABLE CAUSE**

I.      <u>Anonymous Tips and Almeida's Prior Felony Conviction</u>

6.      In or around September 2021 and October 2021, the FBI received several tips regarding an individual named "Angel Almeida," who, according to the tips, possessed firearms, was violent, and posted sexually explicit images of children online.

7.      Specifically, on or about September 22, 2021, an individual identifying himself/herself only by first name contacted the FBI and wrote, in sum an substance and pertinent part, that Almeida (i) posts pictures of children in bondage wear, (ii) threatens to kill/sacrifice and rape people; (iii) has met up with 16 year old and may have targeted other potential victims; and (iv) is a very dangerous individual.[1]  The tipster identified certain social media profiles as used by

_____

[1] The FBI's attempts to contact this individual have been unsuccessful.

Almeida, including a Facebook account with the profile name "Sargent Grey" (the "Sargent Account"), among others. This tipster also stated that Almeida lives in Queens, New York.

8.      On or about October 16, 2021, an anonymous individual wrote to the FBI:

> Angel Almeida (approximately age 21) originally from Ocala, FL with a previous record for Grand theft auto . . . sent child pornography to a minor. He is in possession of drugs and illegal guns (illegal due to his criminal record). He's incredibly dangerous and has stated he will "commit a kamakazi" if he doesn't hit his goal around age 25. He was recently seen around , Bronx, NY and believed to be residing with a family member. He consistently posts animal abuse material and has even posted images of himself having abused an animal by chopping it in half. He is extremely dangerous. He openly admits what he wants to do to children, posts his drug use online, and even posts child abuse material. His account will most likely be gone soon since his accounts do not last long but please look into this individual some of the images he had posted on previous accounts contained completely nude children. He will hurt someone if he hasn't already. A previous alias of his was also "necropedo."

9.      Florida state criminal records indicate that, on or about February 27, 2019, "Angel Luis Almeida" was convicted of, among other things, burglary in the third degree, in violation of Florida Statute 810.02, a crime punishable by up to 5 years' imprisonment. That same day, Almeida was sentenced to serve 18 months' imprisonment. Florida prison records reflect that Almeida was released from prison on or about March 1, 2020. Based on a comparison of a Florida arrest photograph of Angel Almeida to the photographs of the individual operating multiple social media accounts described below, I believe that the photographs of the person operating those accounts depict Almeida.

10.     As set forth below, multiple social media accounts belonging to Almeida have posted photographs that appear to show him handling firearms, which would constitute a violation of Title 18, United States Code, Section 922(g)(1).

II.    Almeida Possessed a Firearm and Ammunition at the SUBJECT PREMISES

11.    During my review of the publicly available portions of the Sargent Account (one of the accounts identified by the tipster described above), I found the below photographs depicting Almeida with what appears to be a firearm and ammunition. The Facebook website indicates that these photographs were posted on August 13, 2021 (left) and July 20, 2021 (right).

 

12.    The photograph on the left depicts Almeida pointing what appears to be a firearm at the camera. The photograph on the right depicts an individual with ammunition across their chest, with a skull face mask obscuring the individual's face.

13.    Based on my training, experience, and open-source research, I know that the black flag in the background of the photograph on the right is associated with the "Order of Nine Angles" or "O9A," a worldwide Satanist belief-based group which embraces elements of neo-Nazism and white supremacy. Members and associates of O9A have espoused violent, neo-Nazi, anti-Semitic, and Satanic beliefs, and have expressed admiration for figures such as Adolf

Hitler and Usama Bin Laden.  Members and associates of O9A have also participated in acts of violence, including murders.

14.    According to records provided by Facebook, a phone number associated with the Sargent Account ends in the number 9085 (the "9085 Phone").  According to cell site location information provided by T-Mobile, on July 20, 2021, the date the photograph on the right was posted, the 9085 Phone was located at a location near the SUBJECT PREMISES. [2]

15.    The 9085 Phone is a T-Mobile phone number registered in the name "Angel Olmedo" at the address "█████████████████████," and whose service began on April 21, 2021.  "Olmedo" appears to be a phonetic or alternative spelling of Almeida's true name, and the listed address has similarities to the SUBJECT PREMISES (same street number and both in ██████ but is associated with a non-residential structure that according to a Google Maps image taken in or around October 2021 is currently not in use.  Based on my training and experience, and knowledge of this case, I believe that Almeida is using false identity information to obscure his relationship to the 9085 Phone.

16.    According to records from Amazon, an Amazon account associated with Almeida indicates that a billing address for Almeida is the SUBJECT PREMISES.  The SUBJECT

---

[2] The cell phone location data is insufficiently precise to indicate whether the phone was in fact inside the SUBJECT PREMISES, but the nature and frequency of the location data in this location, together with the other information described herein, supports my conclusion that the photograph was posted from the SUBJECT PREMISES.

PREMISES is also identified as the most recently created address in the "Address History" portion of the data provided by Amazon.[3]



18.    Notably, the Skull Mask purchased by Almeida on June 19, 2021 and shipped to the SUBJECT PREMISES appears to be the same mask as the one worn in the photograph posted to the Sargent Account, which was posted one month later on July 20, 2021, and is depicted above.

---

[3] As discussed more fully below, the Amazon records indicate that Almeida resided at a premises in Long Island City until he moved to the SUBJECT PREMISES in approximately May or June 2021.

19.     According to records provided by Verizon, an account registered in the name "Milton Almeida" provides internet services to the SUBJECT PREMISES.   According to open-source database records, Milton Almeida appears to be a family member of Angel Almeida.

20.     According to those same Verizon records, IP addresses used to sign into the Amazon account in the days before and after the purchase of the Skull Mask, as well as IP addresses used to log into the Sargent Account in the days before and after Almeida posted the pictures depicted above is associated with that same internet account, which provides internet services for the SUBJECT PREMISES.

21.     Amazon records indicate that the Skull Mask was purchased from an IP address associated with T-Mobile.   As discussed herein, Almeida is associated with several telephone numbers operated by T-Mobile.   Accordingly, I believe that Almeida purchased the Skull Mask from his phone, and then shipped the mask to the SUBJECT PREMISES, but also accessed that same Amazon account from an electronic device that utilized the internet service at the SUBJECT PREMISES.

22.     Accordingly, there is probable cause to conclude that Almeida utilizes electronic devices and mobile phones at the SUBJECT PREMISES to capture and distribute photographs of his unlawful possession of firearms, has a uniquely identifying mask at the SUBJECT PREMISES that would help establish his unlawful possession of a firearm and ammunition, and has a firearm and ammunition in the SUBJECT PREMISES.

III.    <u>Almeida Posted Additional Materials Regarding Possession of a Firearms, Interest in the Exploitation of Minors and Abuse of Animals From the SUBJECT PREMISES</u>

23.     I have identified a second social media account, an Instagram account with the username "Necropedocell" (the "Necro Account") that is associated with Almeida.   Notably,

9

the anonymous tip described in Paragraph 8 above identified an alias for Almeida as "necropedo." Based on my review of public portions of the Necro Account, I have found the following:

a.   Multiple photographs of an individual who is identifiable as Almeida based on a comparison to other known photographs of Almeida.

b.   Photographs of Almeida possessing firearms, including two posted on or about February 20, 2021.

 

c.   In certain posts on the Necro Account, Almeida expressed interest in and posts photographs consistent with violence against and sexual exploitation of minors.  In a post on or about February 21, 2021, Almeida wrote, to accompany a photograph of a firearm, "For the 2k pedophile haters [preying hands emoji]."[4]

---

[4] Unless otherwise indicated, all text of postings described herein are reproduced with original spelling and grammar.



d.   Similarly, on or about February 20, 2021, Almeida posted what appears, in my training and experience, to be a child, gagged and bound. Accompanying the photograph, Almeida wrote, "Life's always been shit still I see the past through rose colored lenses."



This example of Almeida's interest in the exploitation of minors corroborates the anonymous tip that he possesses and distributes child pornography.

24.   According to records from Facebook, a phone number ending in 7241 (the "7241 Phone") was the verified registered number for the Necro Account.

11

25.     According to records provided by T-Mobile, "Angel Almeida" was the subscriber of a phone number ending in 7241 (the "7241 Phone") as of February 2021.  According to T-Mobile records, Almeida resided as of that date at an address in Long Island City, New York (the "LIC Premises").

26.     According to Amazon records, Almeida listed the LIC Premises as an address in the account on June 19, 2020, and identified the SUBJECT PREMISES as an address in the account on February 9, 2021.  The records further reflect that the orders placed by Almeida were shipped and billed to the LIC Premises from July 2020 to May 2021, and then to the SUBJECT PREMISES thereafter.[5]  Accordingly, the records reflect that Almeida appears to have moved from the LIC Premises to the SUBJECT PREMISES sometime around February through May 2021.

27.     According to Verizon records, an IP address used to access the Necro Account in and around the days of the posts described above are associated with an internet account registered in Almeida's name and providing internet services for the SUBJECT PREMISES. Other IP addresses used to access the Necro Account during that time period are associated with T-Mobile, indicating that Almeida also used a mobile phone to access the account.

28.     I have also reviewed the publicly accessible portions of an Instagram profile with the name "Stain_Lord_352" (the "Stain Account").  From that review, I learned that Almeida

---

[5]     There is one order associated with the LIC Premises in July 2021, but Amazon records reflect that this is associated with Audible, a service that provides audio books for phones and other electronic devices, and did not require any physical materials to be shipped.  I am also aware that Audible typically provides for automatic billing.  I therefore believe this later reference to the LIC Premises to be due to Almeida failing to update billing records with Audible.

acknowledged that the account belonged to him, admitted to owning and took pictures with a firearm, posted pictures depicting violence against animals, and threatened violence against police if they attempted to apprehend him.



30.    Notably, according to cell phone location information provided by T-Mobile, the 9085 Phone associated with Almeida indicates that the phone was at or near the SUBJECT PREMISES from November 1 through November 3, 2021, both before and after the above-described picture was posted on the Stain Lord Account.

13

31.    Based on my review of the Stain Lord Account, I observed the additional following materials:

a.    On or about November 7, 2021, Almeida posted a photograph of Dylann Roof. Based on my training, experience, and open-source research, I know that Dylann Roof is a white supremacist who perpetrated a 2015 mass shooting at a Charleston church, killing nine African Americans.

b.    On or about November 13, 2021, Almeida posted a video of Elliot Rodger. Accompanying the video, Almeida wrote "My life story".  Based on my training, experience, and open-source research, I know that in 2014 Elliot Rodger killed six people and wounded 14 others in Isla Vista, California.

c.    On or about November 10, 2021, Almeida posted "People always testing my patience but who the fuck wants to link I'll give you my addy or you can drop yours idgaf my name is Angel Luis Alméida see me about it or shut the fuck up."

d.    On or about November 13, 2021, Almeida posted a photograph of a bloody cat that had apparently been stabbed with a knife, along with the caption, "No limits evil," and also posted a video of an airsoft-style gun being shot at a dog with the caption, "bringing this classic back bcuz I'm getting to much followers and I don't want soft cocks orbiting."

e.    On or about November 12, 2021, Almeida posted the below photograph of himself with appears to be a firearm.

14



f.   On or about November 13, 2021, Almeida posted the below photograph of an individual standing in front of a Nazi flag with a shirt reading "Kiddie Fiddler" in front of a sign that reads, "I'M ADDICTED TO HARDCORE CHILD PORNOGRAPHY."



g.   On or about November 9, 2021, Almeida posted the below photograph and posting where he writes, in relevant part "Mfs be like 'why you got a gun? It's like you want to go back'." Based on my training and experience, I believe this reflects that Almeida admits he owns a firearm,

15

and knows it is unlawful for him to possess that firearm because of his prior felony conviction. Additionally, the photograph appears to reflect criminal activity that occurred in ███ the neighborhood where the SUBJECT PREMISES is located, and ███████ a nearby neighborhood.



32.    Additionally, on or about November 14, 2021, an FBI employee acting in an undercover capacity online obtained the below photographs from a Telegram channel called "Rape Cast." The photographs were posted anonymously.





33.    The photographs on the left and right appear to contain the same Skull Mask that Almeida shipped to the SUBJECT PREMISES, and the Order of Nine Angles flag previously referenced. The photograph in the middle depicts Almeida himself, corroborating that Almeida is the person depicted in the photographs of the individual wearing the Skull Mask.

\*                          \*                          \*

34.    Accordingly, based on the forgoing, there is probable cause to conclude there is evidence, fruits and/or instrumentalities of the Subject Offenses at the SUBJECT PREMISES, including but not limited to: (1) firearms, ammunition and other accessories indicative of firearm possession; (2) the Skull Mask and other uniquely identifiable clothing that establishes Almeida is in fact the person holding the firearms and ammunition; (4) photos and videos that are evidence of the distribution "animal crushing"[6] (5) electronic devices used to acquire, post or disseminate animal crushing videos, or of Almeida unlawfully possessing firearms and ammunition.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

35.    As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive, including on cellular telephones, or other storage media. Thus, the warrant applied for would

---

[6] Title 18, United States Code, Section 48 defines "animal crushing" for purposes of violation of the statute as "actual conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury."

authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

36. *Probable cause.* I submit that if a computer or storage medium, including cellular telephones, is found on the SUBJECT PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system

18

configurations, artifacts from operating system or application operation, file
system data structures, and virtual memory "swap" or paging files. Computer
users typically do not erase or delete this evidence, because special software is
typically required for that task. However, it is technically possible to delete this
information.

d. Similarly, files that have been viewed via the Internet, including files viewed
using a cellular telephone, are sometimes automatically downloaded into a
temporary Internet directory or "cache."

e. Based on actual inspection of other evidence related to this investigation, I am
aware that computer equipment and/or mobile devices were used to generate and
store multiple pieces of evidence of the Subject Offenses, as discussed further
above.

f. There is reason to believe that there is a computer system currently located on the
SUBJECT PREMISES based on records from Verizon establishing that Almeida
uses an internet service connection at the SUBJECT PREMISES.

g. There is also reason to believe that there are cellular telephones located at the
SUBJECT PREMISES because Almeida owns one or more cellular telephones,
resides at the SUBJECT PREMISES, and cell location data indicates that he used
mobile phones at or around the SUBJECT PREMISES.

37.  *Forensic evidence.*  As further described in Attachment B, this application
seeks permission to locate not only computer files that might serve as direct evidence of the crimes
described on the warrant, but also for forensic electronic evidence that establishes how computers

were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the SUBJECT PREMISES because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information,

20

communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs,

21

may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

22

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

38.     *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the

23

warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

39.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

40.    As noted above, records from Verizon indicate that the internet service at the SUBJECT PREMISES is in the name of a relative of Almeida. Because there is reason to

24

believe Almeida resides at the SUBJECT PREMISES with a family member, it is possible that the SUBJECT PREMISES will contain storage media that are predominantly used, and perhaps owned, by a person who is not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## BIOMETRIC UNLOCK

41.     The electronic devices recovered at the SUBJECT PREMISES may include smartphones or other electronic devices that offer their users the ability to unlock the device via the use of biometric data in lieu of a numeric or alphanumeric passcode or password, including the person's facial features (*e.g.*, on devices manufactured by Apple, Inc. ("Apple"), including iPhones, a common feature of this type called "Face ID" that scans a person's face using the smartphone's camera and unlocks the device for recognized users) or fingerprint (*e.g.*, a feature on Apple devices similar to Face ID called "Touch ID," which unlocks the device in response to a recognized finger or thumbprint).

42.     In some circumstances, biometric data cannot be used to unlock a device that has such identification features enabled, and a passcode or password must be used instead. These circumstances may include, for example, when (a) a device has been turned off or restarted; (b) the device has received a remote lock command; (c) more than forty-eight hours have passed since the last time the device was unlocked; (d) when the device has not been unlocked via the feature within a certain period of time; or (e) multiple unsuccessful attempts to unlock the device via such features are made. Thus, in the event law enforcement encounters a locked device, the opportunity to unlock the device biometric identification features often exists only for a short time.

43.    In my training and experience, users of devices that offer biometric identification features often enable them because they are considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect a device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities, and thus have heightened concerns about securing the contents of a device.

44.    The passwords or passcodes that would unlock electronic devices recovered at the scene are not known to law enforcement. As such, it likely will be necessary to scan the face of a user of such devices or press the fingers of the user to the device's biometric sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant.[7] Attempting to unlock such devices in this manner is necessary because the law enforcement may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant.

45.    In light of the foregoing, I request that the Court authorize law enforcement to hold Almeida in place in front of devices falling within the scope of this warrant in order to activate the Face ID unlock feature, and/or press the fingers (including thumbs) of Almeida to the biometric sensors of any such devices, in order to search their contents as authorized by this warrant.

---

[7]    Although it is unknown which of a given user's fingerprints may be capable of unlocking a particular device, based on my training and experience, I know that it is common for users to unlock their devices via the fingerprints on their thumb or index fingers. In the event that law enforcement is unable to unlock a seized device as described above within the number of attempts permitted by the device, it will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

## CONCLUSION

46.     I submit that this affidavit supports probable cause for a warrant to search the SUBJECT PREMISES described in Attachment A and seize the items described in Attachment B.

## REQUEST FOR SEALING

47.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation. Premature disclosure of the

contents of this affidavit and related documents may have a significant and negative impact on the

continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Sean Johnson
Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone this
__22__ day of November, 2021

__*Vera M. Scanlon*
THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

28

## ATTACHMENT A

### Property to be searched

The property to be searched is the premises known as ██████████ ████████████████, NEW YORK, AND ALL CLOSED AND LOCKED CONTAINERS THEREIN AND ALL ELECTRONIC DEVICES FOUND THEREIN (the "SUBJECT PREMISES").

The SUBJECT PREMISES is an apartment located inside a multi-story brown-and-orange brick apartment building. The front entrance to the building has a glass exterior door with the number ████" displayed above. Upon entering the building, there is a lobby with mailboxes for each apartment on one wall; the mailbox for ████" includes a label on it that says "Almeida." There is another glass locked door to further enter the building. The SUBJECT PREMISES is located on the ████ floor of the building. The door to the SUBJECT PREMISES apartment has the number ████ printed on it.

Photographs of the SUBJECT PREMISES are below:

**ATTACHMENT B**

**Particular Things to be Seized**

The items to be seized from the premises described in Attachment A include all information and objects that constitute fruits, contraband, evidence and instrumentalities of violations of Title 18, United States Code, Sections 922(g)(1) (unlawful firearms possession by a convicted felon) and 48 (distribution of animal crush video) (the "Subject Offenses") committed by Angel Almeida, together with others, known and unknown, including the following documents, records, and items:

1.      Any firearms, ammunition, explosives or explosive precursor materials.

2.      Accessories consistent with the use of firearm and ammunition use and possession, including but not limited to holsters, scopes, silencers, firearm cleaning equipment, Kevlar vests, flak jackets, and firearm targets.

3.      Uniquely identifiable clothing and personal items, including the mask, hats, shirts, poster and wristband in the pictures below:






4.      Records, documents, information, photographs, and/or videos related to animal abuse and distribution of animal crushing videos.

5.      Any cellular telephones, computers, or electronic devices that belong to Angel Almeida, or are reasonably believed to have been used by Almeida in connection with the Subject Offenses, and any related evidence, including all type software, hardware, software, passwords, and data security devices;

6.      Records and information related to the use of social media and email accounts.

7.      Records and information related to internet usage at the SUBJECT PREMISES.

8.      Records and information related to association with the Order of Nine Angles or any other violent extremist organization.

   a.  Any firearms, ammunition, explosives or explosive precursor materials;

   b.  Any evidence of firearm, ammunition, explosives, or explosive precursor ownership, and

   c.  Any computers or electronic devices, including cellular telephones, that can be used to create, store, print, or send written correspondence.

9.      For any computer or storage medium, including cellular telephones, whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "Computer"):

   a.  Records and information related to the items described in paragraphs 1 through 8 above.

   b.  Records and information related to the Subject Offenses.

   c.  evidence of who used, owned, or controlled the Computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   d.  evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   e.  evidence of the lack of such malicious software;

2

f.  evidence indicating how and when the Computer was accessed or used to determine the chronological context of Computer access, use, and events relating to crime under investigation and to the Computer user;

g.  evidence indicating the Computer user's state of mind as it relates to the crime under investigation;

h.  evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence;

i.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer;

j.  evidence of the times the Computer was used;

k.  passwords, encryption keys, and other access devices that may be necessary to access the Computer;

l.  documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer;

m.  records of or information about Internet Protocol addresses used by the Computer;

n.  records of or information about the Computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

o.  contextual information necessary to understand the evidence described in this attachment.

This warrant authorizes law enforcement personnel to:

1.  Press or swipe the fingers (including thumbs) of Angel Almeida to the fingerprint scanner of any seized device with a biometric unlocking feature;

2.  Hold Angel Almeida in place while holding a device with a biometric unlocking feature in front of his face to activate the facial recognition feature; and/or

3.  Hold Angel Almeida in place while holding a device with a biometric unlocking feature in front of his face to activate the iris recognition feature,
all for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

Law enforcement officers or agents will select which fingers to press to the device(s).

3

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigative agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.