UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA,

        v.

ANGEL ALMEIDA,

              Defendant.

------------------------------------------------------x

**MEMORANDUM AND ORDER**
21-CR-613 (RPK)

RACHEL P. KOVNER, United States District Judge:

Over four months ago, the Court ordered defendant Angel Almeida committed to the custody of the Attorney General for hospitalization and mental health treatment under 18 U.S.C. § 4241(d).  *See* May 20, 2024 Order.  To date, the government has not transferred Almeida to an appropriate facility for treatment, though it has represented that Almeida is scheduled to be transferred next month.  This prehospitalization delay implicates Almeida's due process rights, though the Court need not determine precisely whether Almeida's rights were violated because the remedy the Court would order would largely be coextensive with the government's pre-existing plans.  Accordingly, the Court discharges its *sua sponte* order to show cause and orders the government to provide an update when either (i) Almeida is transferred to the designated medical facility or (ii) the Bureau of Prison's anticipated transfer schedule changes, and in any event no later than November 30, 2024.

## BACKGROUND

Angel Almeida is charged with unlawful possession of a firearm and ammunition, sexual crimes against children, and possession of child pornography.  *See* Superseding Indictment (Dkt. #20).  Since being arrested in November 2021, Almeida has been held in detention, currently at

the Metropolitan Detention Center in Brooklyn, New York.  *See* Order of Detention (Dkt. #2); Almeida Resp. 2 (Dkt. #92).

On May 20, 2024, after ordering a psychological evaluation and conducting a hearing to evaluate Almeida's competency to stand trial, the Court found by a preponderance of the evidence that Almeida "is presently suffering from a mental disease or defect rendering the defendant mentally incompetent to the extent that the defendant is unable to assist properly in his defense." May 20, 2024 Order.  As required by 18 U.S.C. § 4241(d), the Court ordered Almeida "committed to the custody of the Attorney General" and ordered "that the Bureau of Prisons hospitalize the defendant for treatment in a suitable facility for a period not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the proceedings to go forward." *Ibid.*; *see* 18 U.S.C. § 4241(d)(1).

To date, Almeida remains at the Metropolitan Detention Center.  Though the Bureau of Prisons has designated Almeida to a suitable medical facility, Almeida is not projected to be transferred until November 2024—approximately six months after the Court's order of hospitalization.  *See* Status Report (Dkt. #85).  In response to this revelation, the Court *sua sponte* ordered briefing from the parties "addressing whether the government's failure to hospitalize the defendant for treatment since the Court's order of May 20, 2024 is consistent with (i) 18 U.S.C. § 4241(d)(1); and (ii) this Court's order."  *See* Oct. 11, 2024 Order to Show Cause.  The Court specifically highlighted the Ninth Circuit's decision in *United States v. Donnelly*, 41 F.4th 1102, 1107 (9th Cir. 2022) (per curiam), and asked the parties to discuss the appropriate remedy for any violation.  *See ibid.*  The parties have responded—the government argues that the prehospitalization delay is permissible, while Almeida asks for an order directing the Bureau of Prisons to transfer Almeida within fourteen days.  *See* Gov't Resp. (Dkt. #91); Almeida Resp.

**DISCUSSION**

The Court discharges its order to show cause. Though the government's four-month delay in committing Almeida to an appropriate medical facility for treatment does not violate the statutory limits in 18 U.S.C. § 4241(d), the delay does strain the limits of due process. Nevertheless, the government has represented that it will transport the defendant to an appropriate medical facility next month. Courts have commonly authorized similar windows to remedy a due process violation from comparable delays. Accordingly, the Court declines to conclusively find a due process violation and to order relief, and instead directs the government to immediately update the Court if the defendant is transferred or if there is any change to its anticipated transfer timeline.

**I.    Section 4241(d) does not set out a statutory time limit by which a defendant must be hospitalized for treatment.**

Section 4241 sets out the procedure when a criminal defendant's competency to stand trial is in question. After a prosecution is commenced and before sentencing, either party may move "for a hearing to determine the mental competency of the defendant," which the court shall grant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The court may also order such a hearing on its own motion. *Ibid.* Prior to the hearing, "the court may order that a psychiatric or psychological examination of the defendant be conducted." *Id.* § 4241(b). If, after the hearing, the court finds that the defendant is mentally incompetent to stand trial by a preponderance of the evidence,

> the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

3

18 U.S.C. § 4241(d)–(d)(1).

Almeida argues that "the four-month period for an initial restoration evaluation [in Section 4241(d)(1)] begins when the Court commits a defendant to the custody of the Attorney General for that purpose." Almeida Resp. 3–4. Accordingly, because over four months have now passed since the Court's order that Almeida be hospitalized, defendant argues, the government has violated the time periods set out by Section 4241(d)(1).

Almeida's reading of the statute is incorrect. The phrase containing the four-month limitation—"for such a reasonable period of time, not to exceed four months"—modifies the preceding command that the "Attorney General shall hospitalize the defendant for treatment in a suitable facility." The four-month period thus operates as a limit on the amount of time the Attorney General may "hospitalize the defendant for treatment." The statute does not itself provide a time limit by which the Attorney General must *begin* hospitalization following an order by a court finding that a defendant is mentally incompetent. Common sense suggests that a court's entry of an order finding incompetence and the commencement of hospitalization cannot be simultaneous—the Bureau of Prisons will need time to locate a "suitable facility" appropriate for "the nature of the offense and the characteristics of the defendant," 18 U.S.C. § 4247(a)(2), and transfer the defendant there.[*]

That conclusion is also compelled by Second Circuit precedent. In *United States v. Magassouba*, the Second Circuit concluded that Section 4241(d)(1)'s four-month limit applies "only on the Attorney General's authority to hold an incompetent defendant in custodial

_____

[*] For the same reasons, the delay in committing Almeida to a facility for treatment does not violate the Court's May 20, 2024 order, which directed the "the Bureau of Prisons [to] hospitalize the defendant for treatment in a suitable facility for a period not to exceed four months," but did not direct that that hospitalization commence immediately. May 20, 2024 Order.

hospitalization for the purpose of determining the probability of his regaining competency." 544 F.3d 387, 408 (2d Cir. 2008).  There, the court concluded that Section 4241(d) had been violated because the Bureau of Prisons had held the defendant in custodial hospitalization longer than four months. *See id.* at 410.  The court found the error harmless, however, because the period of excess hospitalization consisted of only a few weeks. *See id.* at 412–15.  The Second Circuit explicitly rejected the argument that the period of excess hospitalization included the two-month period following the district court's order committing the defendant to the Attorney General's custody but prior to the defendant being hospitalized because "that commitment was authorized not by § 4241(d)(1) but by the Bail Reform Act, 18 U.S.C. § 3142." *Id.* at 413.  Similarly, the Ninth and Eleventh Circuits have held that "that § 4241(d)'s four-month limitation, by its terms, applies to the hospitalization period only." *United States v. Alhindi*, 97 F.4th 814, 824–26 (11th Cir. 2024); *see Donnelly*, 41 F.4th at 1105 (holding that "the text of the statute makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized" but reserving on the question of whether "the statute permits a delay between commitment and hospitalization"); *see also United States v. Berard*, 671 F. Supp. 3d 107, 115–16 (D.N.H. 2023) (collecting district court cases agreeing that the four-month limit in Section 4241(d)(1) applies only to the hospitalization period); *but see United States v. Carter*, 583 F. Supp. 3d 94, 100–01 (D.D.C. 2022) (concluding that the four-month limit begins at the moment of the court's commitment order and includes prehospitalization delays in transferring the defendant to a suitable facility); *Donnelly*, 41 F.4th at 1108–09 (Watford, J. concurring) (same).

## II.   Delays of over four months strain due process.

That Section 4241(d) does not provide a statutory time limit governing prehospitalization delays does not, however, mean that the government has carte blanche to delay transferring a defendant indefinitely.  Congress enacted Section 4241(d) following the Supreme Court's decision

in *Jackson v. Indiana*, 406 U.S. 715 (1972). *See Magassouba*, 54 F.3d at 403. There, a state criminal defendant, deemed incompetent to stand trial, had been detained for three-and-a-half years without any sign that he could be restored to capacity. *Jackson*, 406 U.S. at 738–39. The Court ruled that this delay violated due process, reasoning that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* at 738. Accordingly, a criminal defendant "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Ibid.* Responding to the due process concerns articulated by *Jackson*, Congress adopted Section 4241, which set an outer limit of four months on the time the federal government could hospitalize a defendant for the purposes of determining whether there was a substantial probability he could be restored to competency. *See Magassouba*, 544 F.3d at 403.

As many courts have concluded, even though Section 4241(d) does not itself set a limit on the acceptable length of time a defendant may be detained awaiting their hospitalization, due process still requires the length of this period of prehospitalization delay to "bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738; *see Magassouba*, 544 F.3d at 416 ("[O]nce a defendant is found incompetent, continued confinement while the parties and the court assess his ability to regain competency must comport with the reasonable time limitations of due process, regardless of whether that confinement involves custodial hospitalization pursuant to § 4241(d) or general detention pursuant to § 3142."); *see, e.g.*, *United States v. Calderon-Chavez*, 688 F. Supp. 3d 472, 477–79 (W.D. Tex. 2023); *United States v. Hylton*, No. 18-CR-102 (DLC), 2023 WL 7280170, at *5–6 (S.D.N.Y. Nov. 3, 2023); *United States v. Mouton*, No. 20-CR-501, 2023 WL 3872206, at *2 (S.D. Tex. June 7, 2023); *United States*

*v. Castrellon*, No. 22-CR-112 (CMA) (GPG), 2023 WL 2330688, at *2–4 (D. Colo. Mar. 1, 2023), *report and recommendation adopted*, 2023 WL 9957097 (D. Colo. May 12, 2023); *United States v. Wazny*, No. 21-CR-247, 2022 WL 17363048, at *5 (M.D. Pa. Dec. 1, 2022); *United States v. Young*, No. 21-CR-6010 (DGL), 2022 WL 7087140, at *3 (W.D.N.Y. Oct. 12, 2022); *cf. Donnelly*, 41 F.4th at 1105–06 (interpreting Section 4241(d) in light of the constitutional concerns laid out in *Jackson* to implicitly require prehospitalization delays be reasonable in length).  The due process inquiry is a case-by-case inquiry that requires the court to consider the totality of the circumstances. *Magassouba*, 544 F.3d at 416–17.

    Without conclusively deciding the issue, the Court notes its view that several factors weigh in favor of finding a due process violation here.  The length of the delay already incurred—over four months—is considerable in light of the purpose of the detention.  As *Donnelly* explains, Section 4241(d) indicates that the purpose of the prehospitalization period is to permit the Attorney General to locate a facility suitable for treating the defendant and to arrange transport to that facility.  41 F.4th at 1106.  After transport, Congress permits the defendant to be detained for a maximum of four months for an evaluation of whether there is a substantial probability that the defendant can be restored to competency.  18 U.S.C. § 4241(d)(1).  The Court is doubtful that due process would permit a defendant's detention in advance of this evaluation to last longer than the maximum period prescribed for the evaluation itself.  *See Donnelly*, 41 F.4th at 1106; *see also Castrellon*, 2023 WL 2330688, at *3 ("[G]enerally, delays of four, six, or eight months in designating defendants to a medical facility strain the bounds of what can be deemed 'reasonable' periods of detention under *Jackson*."); *Mouton*, 2023 WL 3872206, at *1–2 (concluding four-month delay in hospitalization violated due process); *but see Young*, 2022 WL 7087140, at *3 (concluding six-to-seven month delay did not violate due process); *Wazny*, 2022 WL 17363048,

at *5 (same, for a six-month delay).  Moreover, the only reason given by the government for the delay here—that there are simply too few available beds at federal medical facilities to admit patients within more reasonable periods of time—is not a sufficient excuse to hold federal criminal defendants awaiting competency restoration proceedings in months-long limbo.  *See United States v. Raja*, No. 21-CR-368, 2023 WL 3497234, at *5 (S.D. Ind. May 17, 2023); *United States v. Leusogi*, No. 21-CR-32 (TS), 2022 WL 16855426, at *3 (D. Utah Nov. 10, 2022); *United States v. Carter*, No. 17-CR-190, 2019 WL 9410160, at *2 (E.D. Wis. Oct. 16, 2019), *report and recommendation adopted*, 2020 WL 1620530 (E.D. Wis. Apr. 1, 2020); *United States v. Zapata-Herrera*, No. 14-CR-3639 (GPC), 2015 WL 4878319, at *2–3 (S.D. Cal. Aug. 14, 2015).  Finally, the conditions of Almeida's prehospitalization confinement are highly restrictive, *see* Almeida Resp. 2, heightening the prospect that excessive prehospitalization delay is causing Almeida prejudice.

However, the Court also recognizes that any remedy that would be appropriate here appears duplicative of the government's existing plans.  Judges have commonly ordered that comparable due process violations be remedied through "an order with a deadline of a certain date for transport to a suitable facility," *Raja*, 2023 WL 3497234, at *5—typically seven to thirty days, *see ibid.* (thirty days); *Wazny*, 2022 WL 17363048, at *7 (thirty days); *Calderon-Chavez*, 688 F. Supp. 3d at 489–90 (twenty-one days); *Donnelly*, 41 F.4th at 1107 (seven days).  In several other cases, the judge has declined to set a deadline for transport because the government represented to the Court that the defendant would be transported by a date certain in the near future.  *See Mouton*, 2023 WL 3872206, at *4; *Castellon*, 2023 WL 2330688, at *4.  Here, the government has already represented that Almeida will be transferred to a medical facility in November 2024.  While Almeida asks that the Court order Almeida's transfer more quickly—within fourteen days—the government's

transportation date is within the thirty-day window that courts frequently order.  And the Court is mindful that requiring the Bureau of Prisons to effectuate a transfer two weeks earlier than currently planned could be "unduly disruptive or . . . result in the Attorney General designating [Almeida] to a less-optimal facility," *Castrellon*, 2023 WL 2330688, at *4, while speeding Almeida's transport only slightly.  Accordingly, even if the Court found a due process violation, because Almeida's projected transfer date is imminent, the Court would allow the government to carry out its pre-existing plans in an orderly fashion.  The Court accordingly declines to conclusively determine whether Almeida's due process rights have been violated and order transport within fourteen days.  But the Court expects the government will make every effort to transfer Almeida to a suitable medical facility in the next month, as it has represented.  If Almeida is not transferred and beginning treatment by the end of November, then the Court anticipates considering whether due process warrants further measures, potentially including dismissal of the indictment.

## CONCLUSION

For the foregoing reasons, the Court discharges its *sua sponte* order to show cause.  The government is ordered to provide an update when either (i) Almeida is transferred to the designated medical facility or (ii) the Bureau of Prison's anticipated transfer schedule changes, and in any event no later than November 30, 2024.

SO ORDERED.

 /s/  Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: October 31, 2024
        Brooklyn, New York

9